KAREN P. HEWITT
United States Attorney
JOSEPH J.M. ORABONA
Assistant U.S. Attorney
California State Bar No. 223317
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-7736
Facsimile: (619) 235-2757
Email: joseph.orabona@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MIGUEL ANGEL GONZALEZ-PINTO,<br><br>Defendant. | Criminal Case No. 08CR0384-DMS<br><br>Date: May 9, 2008<br>Time: 11:00 a.m.<br><br>The Honorable Dana M. Sabraw<br><br>**UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTIONS TO**<br><br>**(1)  COMPEL DISCOVERY AND PRESERVE EVIDENCE; AND**<br>**(2)  GRANT LEAVE TO FILE FURTHER MOTIONS**<br><br>**TOGETHER WITH STATEMENT OF FACTS, MEMORANDUM OF POINTS AND AUTHORITIES** |

The plaintiff, UNITED STATES OF AMERICA, by and through its counsel, Karen P. Hewitt, United States Attorney, and Joseph J.M. Orabona, Assistant United States Attorney, hereby files its Response in Opposition to Defendant's above-referenced Motions. This Response in Opposition is based upon the files and records of the case, together with the attached statement of facts and memorandum of points and authorities.

/ /

# I

# STATEMENT OF THE CASE

On February 14, 2008, a federal grand jury in the Southern District of California returned a two-count Indictment charging Miguel Angel Gonzalez-Pinto ("Defendant") with one count of illegal alien in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(5)(A) and 924(a)(2), and one count of unlawful possession of a firearm, in violation of 18 U.S.C. § 922(g)(9). On February 14, 2008, Defendant was arraigned on the Indictment and pled not guilty. On March 21, 2008, Defendant filed his discovery motions. The United States files the following response in opposition.

# II

# STATEMENT OF FACTS

**A.    OFFENSE CONDUCT**

On January 18, 2008, Immigration and Customs Enforcement (ICE) Deportation Officers Gomez and Brown headed to Alpine, California to apprehend Defendant, who was a fugitive alien with an outstanding order of removal that was issued by an immigration judge on or about August 23, 2004. During routine records checks, deportation officers learned that Defendant had registered a 1997 Dodge Dakota pickup truck to 5353 Willows Road in Alpine, California.

On January 18, 2008, at approximately 6:45 a.m., deportation officers encountered Defendant standing outside a driveway at 9119 Willows Road in Alpine, California. Officers recognized Defendant from previously viewing his California driver's license photograph during the routine records checks. Officers Gomez and Brown identified themselves to Defendant, and Defendant acknowledged that he was "Miguel Angel Gonzalez-Pinto." Officer Gomez placed Defendant under arrest and performed a patdown for officer safety. During the patdown, Officer Gomez felt a large object that resembled the handle grip of a firearm bulging out of Defendant's waistband. Officer Gomez asked Defendant whether he had a gun, and Defendant replied "Yes" in Spanish. Officer Gomez removed from Defendant's waistband a revolver – a Ruger magnum, .44 caliber, model Ruger Super Blackhawk, serial number 84-22633. The firearm was loaded with six .44 caliber magnum rounds. Defendant told Officer Gomez that the firearm did not belong to him.

//

Officer Gomez contacted the San Diego Sheriffs Department to take custody of the firearm. Deputy H. Fuentes arrived at the scene in Alpine, California and took possession of the firearm. Deputy Fuentes performed a records check on the firearm and determined that the firearm was registered to someone other than Defendant.

On January 18, 2008, Special Agent M. Beals with the Bureau of Alcohol, Tobacco, Firearms and Explosives informed ICE deportation officers that the firearm was manufactured in Connecticut, and therefore, the firearm had traveled in and affected interstate commerce.

### B. DEFENDANT'S IMMIGRATION HISTORY

Defendant is a citizen and national of Mexico. Defendant was ordered excluded, deported, and removed from the United States to Mexico pursuant to an order issued by an immigration judge on or about August 23, 2004. Defendant appealed his deportation order and was issued an EAD Work Authorization Card, which expired on August 19, 2005. On January 16, 2006, the Board of Immigration Appeals further upheld the Immigration Judge's Order of Removal to Mexico. On April 26, 2006, Defendant appealed his case to the Ninth Circuit. On December 6, 2006, Defendant filed a motion to dismiss his appeal with the Ninth Circuit, and on December 11, 2006, the Ninth Circuit granted Defendant's motion for voluntary dismissal. In addition, records checks revealed that Defendant applied for a Border Crossing Card on October 12, 1983; however, his application was denied on June 7, 1986.

### C. DEFENDANT'S CRIMINAL HISTORY

Defendant has a violent criminal history involving corporal injury to his spouse. On or about October 4, 1994, Defendant was convicted of corporal injury of a spouse, a felony, in violation of California Penal Code § 273.5, and received a sentence of 180 days in jail and 3 years probation. On or about January 19, 2001, Defendant was convicted again of corporal injury of a spouse, a misdemeanor, in violation of California Penal Code § 273.5, and received a sentence of 270 days in jail. On September 11, 2001, Defendant was found in violation of his probation with regard to his 2001 conviction and was sentenced to an additional 15 days in jail.

//
//
//

### III

### THE UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTIONS ALONG WITH MEMORANDUM OF POINTS AND AUTHORITIES

### A.  MOTION TO PRESERVE EVIDENCE/COMPEL DISCOVERY

As of the date of this Motion, the United States has produced 1,328 pages of discovery (including reports of the arresting officers and agents, a criminal history report, documents concerning Defendant's prior convictions and immigration history, and numerous documents from Defendant's Alien Registration Files) and 1 CD-ROM containing Defendant's videotaped, post-arrest statement. The United States will continue to comply with its obligations under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), the Jenks Act (18 U.S.C. §3500 et seq.), and Rule 16 of the Federal Rules of Criminal Procedure ("Fed. R. Crim. P."). At this point the United States has received **no** reciprocal discovery. In view of the below-stated position of the United States concerning discovery, the United States respectfully requests the Court issue no orders compelling specific discovery by the United States at this time.

### 1, 2.  Defendant's Statements And Arrest Reports

The United States has turned over a number of investigative reports, including those which disclose the substance of Defendant's oral statements made in response to routine questioning by United States' law enforcement officers. If additional reports by United States' agents come to light, the United States will supplement its discovery. The United States recognizes its obligations under Fed. R. Crim. P. 16(a)(1)(A) to disclose "the substance of any relevant oral statement made by the defendant, before or after arrest, in response to interrogation by a person the defendant knew was a government agent if the government intends to use the statement in trial." However, the United States is not required under Fed. R. Crim. P. 16 to deliver oral statements, if any, made by a defendant to persons who are not United States' agents. Nor is the United States required to produce oral statements, if any, voluntarily made by a defendant to United States' agents. <u>See</u> <u>United States v. Hoffman</u>, 794 F.2d 1429, 1432 (9th Cir. 1986); <u>United States v. Stoll</u>, 726 F.2d 584, 687-88 (9th Cir. 1984). Fed. R. Crim. P. 16 does not require the United States to produce statements by Defendant that it does not intend to use at trial. Moreover, the United States will not produce rebuttal evidence in advance of trial. <u>See</u> <u>United States v. Givens</u>, 767 F.2d 574, 584 (9th Cir. 1984).

1    The United States also objects to Defendant's request for an order for production of any rough notes of United States' agents that may exist. Production of these notes, if any exist, is unnecessary because they are not "statements" within the meaning of the Jencks Act unless they contain a substantially verbatim narrative of a witness' assertions <u>and</u> they have been approved or adopted by the witness. <u>See</u> discussion <u>infra</u> Part III.A.19; <u>see also</u> <u>United States v. Alvarez</u>, 86 F.3d 901, 906 (9th Cir. 1996); <u>United States v. Bobadilla-Lopez</u>, 954 F.2d 519, 522 (9th Cir. 1992). The production of agents' notes is not required under Fed. R. Crim. P. 16 because the United States has "already provided defendant with copies of the formal interview reports prepared therefrom." <u>United States .v Griffin</u>, 659 F.2d 932, 941 (9th Cir. 1981). In addition, the United States considers the rough notes of its agents to be United States' work product, which Fed. R. Crim. P. 16(a)(2) specifically exempts from disclosure.

The United States objects to Defendant's request for production of Defendant's tapes of his prior deportation proceedings as irrelevant to the charges pending against him – illegal alien in possession of a firearm and unlawful possession of a firearm – because deportation is <u>not</u> an element of either offense. As such, the United States will not comply with this request.

### 3.    *Brady* Material

The United States has complied and will continue to comply with its obligations under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963). Under <u>Brady</u> and <u>United States v. Agurs</u>, 427 U.S. 97 (1976), the government need <u>not</u> disclose "every bit of information that might affect the jury's decision." <u>United States v. Gardner</u>, 611 F.2d 770, 774-75 (9th Cir. 1980). The standard for disclosure is materiality. <u>Id</u>. "Evidence is material under <u>Brady</u> only if there is a reasonable probability that the result of the proceeding would have been different had it been disclosed to the defense." <u>United States v. Antonakeas</u>, 255 F.3d 714, 725 (9th Cir. 2001).

The United States will also comply with its obligations to disclose exculpatory evidence under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963). Furthermore, impeachment evidence may constitute <u>Brady</u> material "when the reliability of the witness may be determinative of a criminal defendant's guilt or innocence." <u>United States v. Blanco</u>, 392 F.3d 382, 387 (9th Cir. 2004) (internal quotation marks omitted). However, the United States will not produce rebuttal evidence in advance of trial. <u>See</u> <u>United States v. Givens</u>, 767 F.2d 574, 584 (9th Cir. 1984).

### 4. Any Information That May Result in a Lower Sentence

Defendant claims that the United States must disclose information affecting Defendant's sentencing guidelines because such information is discoverable under Brady v. Maryland, 373 U.S. 83 (1963). The United States respectfully contends that it has no such disclosure obligation under Brady.

The United States is not obligated under Brady to furnish a defendant with information which he already knows. See United States v. Taylor, 802 F.2d 1108, 1118 n.5 (9th Cir. 1986). Brady is a rule of disclosure, and therefore, there can be no violation of Brady if the evidence is already known to the defendant. In such case, the United States has not suppressed the evidence and consequently has no Brady obligation. See United States v. Gaggi, 811 F.2d 47, 59 (2d Cir. 1987).

But even assuming Defendant does not already possess the information about factors which might affect his guideline range, the United States would not be required to provide information bearing on Defendant's mitigation of punishment until after Defendant's conviction or plea of guilty and prior to his sentencing date. See United States v. Juvenile Male, 864 F.2d 641, 647 (9th Cir. 1988) ("No [Brady] violation occurs if the evidence is disclosed to the defendant at a time when the disclosure remains in value."). Accordingly, Defendant's demand for this information is unwarranted.

### 5. Defendant's Prior Record

The United States has already provided Defendant with a copy of his criminal record and related court documents, in accordance with Fed. R. Crim. P. 16(a)(1)(D).

### 6. Any Proposed 404(b) or 609 Evidence

The United States has complied and will continue to comply with its obligations under Rules 404(b) and 609 of the Federal Rules of Evidence ("Fed. R. Evid."). The United States has already provided Defendant with a copy of his criminal record, in accordance with Fed. R. Crim. P. 16(a)(1)(D).

Furthermore, pursuant to Fed. R. Evid. 404(b) and 609, the United States will provide Defendant with reasonable notice before trial of the general nature of the evidence of any extrinsic acts that it intends to use at trial. See FED. R. EVID. 404(b), advisory committee's note ("[T]he Committee opted for a generalized notice provision which requires the prosecution to appraise the defense of the general nature of the evidence of extrinsic acts. The Committee does not intend that the amendment will supercede other rules of admissibility or disclosure[.]").

The United States intends to introduce Defendant's prior attempt to enter the United States on or about January 26, 1995 and February 15, 1997, as evidence of knowledge, lack of mistake and modus operandi under Fed. R. Evid. 404(b). Further, the United States intends to introduce Defendant's statements made on those two occasions under Fed. R. Evid. 404(b) as evidence of modus operandi. The United States has previously provided discovery of these incidents.

The United States will comply with its obligations under Rule 404(b) with regard to "TECS" records to the extent Rule 404(b) applies. However, the United States objects to this request for "TECS" records to the extent it constitutes rebuttal evidence because such evidence need not be produced in advance of trial. See United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984).

### 7, 10.  Evidence Seized and Tangible Objects

The United States has complied and will continue to comply with Fed. R. Crim. P. 16(a)(1)(E) in allowing Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy all evidence seized and/or tangible objects that are within the possession, custody, or control of the United States, and that are either material to the preparation of Defendant's defense, or are intended for use by the United States as evidence during its case-in-chief, or were obtained from or belongs to Defendant.

The United States need not, however, produce rebuttal evidence in advance of trial. See United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984).

The United States objects to Defendant's request for production of Defendant's tapes of his prior deportation proceedings as irrelevant to the charges pending against him – illegal alien in possession of a firearm and unlawful possession of a firearm – because deportation is not an element of either offense. In addition, the United States objects to the production of records maintained in the Treasury Enforcement Communications System (TECS) as such records are not relevant to the charges pending against Defendant. As such, the United States will not comply with these requests.

### 8.  Request for Preservation of Evidence

The United States will preserve all evidence pursuant to an order issued by this Court. The United States objects to an overbroad request to preserve all physical evidence. The United States does not oppose Defendant's request to inspect the firearm and ammunition possessed by and seized from Defendant in the instant offense.

**9.     *Henthorn* Materials**

The United States has complied and will continue to comply with United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991) by requesting that all federal agencies involved in the criminal investigation and prosecution review the personnel files of the federal law enforcement inspectors, officers, and special agents whom the United States intends to call at trial and disclose information favorable to the defense that meets the appropriate standard of materiality. See United States v. Booth, 309 F.3d 566, 574 (9th Cir. 2002) (citing United States v. Jennings, 960 F.2d 1488, 1489 (9th Cir. 1992)). If the materiality of incriminating information in the personnel files is in doubt, the information will be submitted to the Court for an in camera inspection and review.

Defendant's request that the specific prosecutor in this case review or oversee the personnel files is unwarranted and unnecessary. Henthorn expressly provides that it is the "government," not the prosecutor, which must review the personnel files. Henthorn, 931 F.2d at 30- 31. Accordingly, the United States will utilize its typical practice for review of these files, which involves requesting designated representatives of the relevant agencies to conduct the reviews. The United States opposes the request for an order that the prosecutor personally review or oversee the review of personnel files.

**11.     Expert Witness**

The United States has complied and will continue to comply with Fed. R. Crim. P. 16(a)(1)(G) and provide Defendant with notice and a written summary of any expert testimony that the United States intends to use during its case-in-chief at trial under Fed. R. Evid. 702, 703, or 705.

**12, 13, 15, 20, 23.     Evidence of Bias or Motive to Lie / Impeachment Evidence/ Evidence Affecting Perception, Recollection, Ability to Communicate, or Truth Telling / *Giglio* Material**

The United States will comply with its obligations to disclose impeachment evidence under Giglio v. United States, 405 U.S. 150 (1972). Moreover, the United States will disclose impeachment evidence, if any exists, when it files its trial memorandum, although it is not required to produce such material until after its witnesses have testified at trial or at a hearing. See United States v. Bernard, 623 F.2d 551, 556 (9th Cir. 1979).

The United States recognizes its obligation to provide information related to the bias, prejudice or other motivation of United States' trial witnesses as mandated in Napue v. Illinois, 360 U.S. 264

1  (1959). The United States will provide such impeachment material in its possession, if any exists, at
2  the time it files its trial memorandum. At this time, the United States is unaware of any prospective
3  witness that is biased or prejudiced against Defendant or that has a motive to falsify or distort his or her
4  testimony. The United States is unaware of any evidence that any United States witness' ability to
5  perceive, recollect, communicate or tell the truth is impaired.

### 14. Evidence of Criminal Investigation of Any United States' Witness

The United States objects to Defendant's overbroad request for evidence of criminal investigations by federal, state, or local authorities into prospective government witnesses. The United States is unaware of any rule of discovery or Ninth Circuit precedent that entitles Defendant to any and all evidence that a prospective government witness is under investigation by federal, state or local authorities. Moreover, as discussed above, the United States has no obligation to disclose information not within its possession, custody or control. See United States v. Gatto, 763 F.2d 1040, 1048 (9th Cir. 1985); United States v. Aichele, 941 F.2d 761, 764 (9th Cir. 1991) (California state prisoner's files outside of federal prosecutor's possession); United States v. Chavez-Vernaza, 844 F.2d 1368, 1375 (9th Cir. 1987) (the federal government had no duty to obtain from state officials documents of which it was aware but over which it had no actual control); cf. Beaver v. United States, 351 F.2d 507 (9th Cir. 1965) (Jencks Act refers to "any statement" of a witness produced by United States which is in possession of United States and does not apply to a recording in possession of state authorities).

The United States recognizes and will comply with its obligations under the rules of discovery and Ninth Circuit precedent to disclose exculpatory and impeachment information. The United States also recognizes its obligation to provide information--if any exists--related to the bias, prejudice or other motivation of United States' trial witnesses, as mandated in Napue v. Illinois, 360 U.S. 264 (1959), when it files its trial memorandum.

### 16, 17. Names of Witnesses and Witness Addresses

The United States objects to Defendant's request for witness addresses and phone numbers. Defendant is not entitled to the production of addresses or phone numbers of possible witnesses for the United States. See United States v. Hicks, 103 F.3d 837, 841 (9th Cir. 1996); United States v. Thompson, 493 F.2d 305, 309 (9th Cir. 1977), cert denied, 419 U.S. 834 (1974). None of the cases cited

1  by Defendant, nor any rule of discovery, requires the United States to disclose witness addresses. There
2  is no obligation for the United States to provide addresses of witnesses that the United States intends
3  to call or not call. Therefore, the United States will not comply with this request.
4        The United States will produce the names of witnesses it intends to call at trial. Defendant has
5  already received access to the names of potential witnesses through the discovery sent to his counsel.
6  The United States is not aware of any individuals who were witnesses to Defendant's offense except
7  the law enforcement agentes who apprehended him. The names of these individuals have already been
8  provided to Defendant.

9        **18.     Statements Relevant to the Defense**

10        The United States objects to the request for "any statement relevant to any possible defense or
11  contention" as overbroad and not required by any discovery rule or Ninth Circuit precedent. Therefore,
12  the United States will only disclose relevant statements made by Defendant pursuant to this request.

13        **19.     Jencks Act Material**

14        The United States will fully comply with its discovery obligations under the Jencks Act. For
15  purposes of the Jencks Act, a "statement" is (1) a written statement made by the witness and signed or
16  otherwise adopted or approved by him, (2) a substantially verbatim, contemporaneously recorded
17  transcription of the witness' oral statement, or (3) a statement by the witness before a grand jury. See
18  18 U.S.C. § 3500(e). Notes of an interview only constitute statements discoverable under the Jencks
19  Act if the statements are adopted by the witness, as when the notes are read back to a witness to see
20  whether or not the government agent correctly understood what the witness said. United States v.
21  Boshell, 952 F.2d 1101, 1105 (9th Cir. 1991) (citing Goldberg v. United States, 425 U.S. 94, 98 (1976)).
22  In addition, rough notes by a government agent "are not producible under the Jencks Act due to the
23  incomplete nature of the notes." United States v. Cedano-Arellano, 332 F.3d 568, 571 (9th Cir. 2004).
24        Production of this material need only occur after the witness making the Jencks Act statements
25  testifies on direct examination. See United States v. Robertson, 15 F.3d 862, 873 (9th Cir. 1994).
26  Indeed, even material that is potentially exculpatory (and therefore subject to disclosure under Brady)
27  need not be revealed until such time as the witness testifies on direct examination if such material is
28  contained in a witness's Jencks Act statements. See United States v. Bernard, 623 F.2d 551, 556 (9th

Cir. 1979). Accordingly, the United States reserves the right to withhold Jencks Act statements of any particular witness it deems necessary until after they testify.

### 21, 22. Agreements/Informants and Cooperating Witnesses

Defendant incorrectly asserts that Roviaro v. United States, 353 U.S. 52 (1957), establishes a per se rule that the United States must disclose the identity and location of confidential informants used in a case. Rather, the Supreme Court held that disclosure of an informer's identity is required only where disclosure would be relevant to the defense or is essential to a fair determination of a cause. Id. at 60-61. Moreover, in United States v. Jones, 612 F.2d 453 (9th Cir. 1979), the Ninth Circuit held:

> The trial court correctly ruled that the defense had no right to pretrial discovery of information regarding informants and prospective government witnesses under the Federal Rules of Criminal Procedure, the Jencks Act, 18 U.S.C. § 3500, or Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

Id. at 454. As such, the United States is not obligated to make such a disclosure, if there is in fact anything to disclose, at this point in the case.

That said, the United States is unaware of the existence of an informant or any cooperating witnesses in this case. The United States is also unaware of any agreements between the United States and potential witnesses. However, as previously stated, the United States will provide Defendant with a list of all witnesses which it intends to call in its case-in-chief at the time the Government's trial memorandum is filed, although delivery of such a list is not required. See United States v. Dischner, 960 F.2d 870 (9th Cir. 1992); United States v. Mills, 810 F.2d 907, 910 (9th Cir. 1987); United States v. Culter, 806 F.2d 933, 936 (9th Cir. 1986).

### 24. Reports of Scientific Tests or Examinations

The United States will provide Defendant with any scientific tests or examinations, in accordance with Fed. R. Crim. P. 16(a)(1)(F).

### 25. Residual Request

As indicated, the United States will comply with its discovery obligations in a timely manner.

### D.   LEAVE TO FILE FURTHER MOTIONS

The United States does not oppose Defendant's request to file further motions if they are based on new discovery or other information not available to Defendant at the time of this motion hearing.

**IV**

**CONCLUSION**

For the foregoing reasons, the United States requests the Court deny Defendant's Motions to Compel Discovery, Preserve Evidence, and Grant Leave to File Further Motions, unless unopposed.

DATED: April 28, 2008.

                                      Respectfully submitted,

                                      KAREN P. HEWITT
                                      United States Attorney

                                      /s/ *Joseph J.M. Orabona*
                                      JOSEPH J.M. ORABONA
                                      Assistant United States Attorney